IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KATHY G. KIRKLAND                                                           PLAINTIFF

v.                                    CIVIL NO. 19-5235

ANDREW M. SAUL, Commissioner
Social Security Administration                                              DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kathy G. Kirkland, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on June 30, 2016, alleging an inability to work since January 1, 2011,[1] due to chronic pain, degenerative disc disease, an anxiety disorder, a panic disorder, depression, carpal tunnel syndrome, an anemia disorder with infusions and right hip pain. (Tr. 110, 209). For DIB purposes, Plaintiff maintained insured status through June 30, 2016. (Tr. 10, 216). An administrative hearing was held on May 15, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 28-59).

---

[1] Plaintiff, through her attorney, amended her alleged onset date to March 1, 2015. (Tr. 10, 33).

1

By written decision dated January 3, 2019, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found that through the date last insured Plaintiff had the following severe impairments: degenerative disc disease (disorders of the back-discogenic and degenerative); carpal tunnel syndrome; osteoarthrosis and allied disorders; and obesity. However, after reviewing all of the evidence presented, the ALJ determined that through the date last insured Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 13-14).  The ALJ found through the date last insured Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except occasionally stoop and crouch.

(Tr. 14). With the help of a vocational expert, the ALJ determined that through the date last insured Plaintiff could perform her past relevant work as a cashier checker, as generally performed. (Tr. 15).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 21, 2019. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 3). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

II.     **Evidence Presented**:

At the time of the administrative hearing before the ALJ on May 15, 2018, Plaintiff, who was fifty-four years of age, testified she had obtained a high school education. (Tr. 32). The record

revealed Plaintiff's past relevant work consists of work as a film cutter, a hand packager, and a cashier/checker. (Tr. 52, 234).

The pertinent medical evidence during the relevant time period reflects the following. On March 2, 2015, Plaintiff was seen by Dr. Adam Green for a pain management follow-up visit for her low back pain. (Tr. 388-390, 675). Plaintiff reported she did not notice much of a difference in her pain after the epidural steroid injection. Plaintiff indicated her pain was mainly in the low back on the right side with radiation into the right lower extremity at times. An examination revealed Plaintiff had a normal gait but had tenderness in the lumbar spine. Dr. Green noted Plaintiff experienced pain with internal and external rotation of the hips. Plaintiff had a normal mood and affect. Dr. Green assessed Plaintiff with lumbago, lumbar spondylosis, obesity, and right wrist pain. Plaintiff was prescribed a trial of Robaxin, and naproxen. Plaintiff was to continue with her home exercise plan for physical therapy and scheduled for a radiofrequency ablation (RFA). Plaintiff was to continue to wear a right wrist splint.

On March 20 2015, Plaintiff underwent right L2-dorsal primary ramus L5 medial branch nerve blocks for the right facet joints L3/4, L4/5, and L5/S1, performed by Dr. Green. (Tr. 387-388, 893-895). Dr. Green noted Plaintiff tolerated the procedure well without any immediate complications.

On March 31, 2015, Plaintiff was seen by Dr. Lance A. Faddis for a six-month medication refill appointment. (Tr. 386, 672-673). Plaintiff reported she had a "knot" in her stomach for the past six months and that she felt bloated. Plaintiff reported congestion that started the previous week. Plaintiff wanted to discuss losing weight. Plaintiff indicated she had recently been denied disability for her back and other problems because she was told it was her weight that caused her

not to be granted disability. After examining Plaintiff, Dr. Faddis assessed her with depression that was stable on medication; mild asthma that responded well to medication; sinusitis; and an abdominal mass, hernia suspected.

On April 14, 2015, Plaintiff underwent an abdominal ultrasound that revealed no demonstrable mass or hernia at the site of the palpable focus in the right periumbilical region. (Tr. 918-920).

On April 20, 2015, Plaintiff underwent right L2-dorsal primary ramus L5 medial branch nerve blocks for the right facet joints L3/4, L4/5, and L5/S1, performed by Dr. Green. (Tr. 930-937). Plaintiff reported greater than eighty percent pain relief that lasted at least twelve hours after her previous nerve block. Plaintiff tolerated the procedure well without immediate complication.

On May 7, 2015, Plaintiff underwent a right L2-dorsal primary ramus L5 medial branch RFA, to denervate the right L3/4, L4/5, and L5/S1 facet joints, performed by Dr. Green. (Tr. 960-963). Plaintiff tolerated the procedure well without immediate complication.

On June 1, 2015, Plaintiff was seen by Dr. Daniel S. Bradford for a follow-up for her iron deficiency anemia. (Tr. 602-604). Plaintiff reported that while she had chronic pain, she underwent an ablation procedure that helped relieve eighty percent of her back pain. Dr. Bradford noted Plaintiff experienced situational depression. Plaintiff reported a decreased energy level but she was encouraged to stay active. Dr. Bradford recommended Plaintiff refrain from physically strenuous activity but opined Plaintiff was ambulatory and able to carry out light to sedentary work. Upon a physical examination, Dr. Bradford noted Plaintiff exhibited normal range of motion in her spine and extremities with no obvious sign of weakness. Plaintiff was noted to have a normal psychiatric exam.

On June 3, 2015, Plaintiff was seen by Dr. Green for a pain management follow-up for her low back pain. (Tr. 375-376). Plaintiff reported about eighty percent pain relief on her right side after the lumbar RFA, but she had noticed more left-sided pain. Plaintiff reported some neuralgia around her right low back and buttocks but it improved with time and lidocaine ointment. Plaintiff's medication consisted of naproxen, as needed. After examining Plaintiff, Dr Green assessed her with lumbago, lumbar spondylosis, and morbid obesity. Plaintiff was scheduled for a left-sided RFA. Plaintiff was encouraged to exercise daily.

On June 30, 2015, Plaintiff underwent left L2-dorsal primary ramus L5 medial branch nerve blocks for the right facet joints L3/4, L4/5, and L5/S1, performed by Dr. Green. (Tr. 997-999). Plaintiff tolerated the procedure well without immediate complication.

On July 14, 2015, Plaintiff reported at least eighty percent pain relief that lasted at least four hours after the nerve block. (Tr. 1048-1055). After examining Plaintiff, Dr. Green assessed Plaintiff with lumbar spondylosis. Dr. Green administered the left L2 dorsal ramus L5 medial branch nerve blocks as planned. Plaintiff tolerated the procedure well without immediate complication.

On July 28, 2015, Plaintiff underwent a left L2-dorsal primary ramus L5 medial branch RFA, to denervate the right L3/4, L4/5, and L5/S1 facet joints, performed by Dr. Green. (Tr. 372). Plaintiff reported greater than fifty percent improvement after her trial left nerve block. Plaintiff tolerated the procedure well without immediate complication.

On August 19, 2015, Plaintiff was seen in the emergency room for abdominal pain. (Tr. 1115-1135). Plaintiff reported this had been occurring for months and that her primary care provider had found nothing but she experienced a worsening in pain so she came in for an

evaluation. Plaintiff denied fatigue, myalgias, arthralgias, a gait problem, neck pain, weakness, decreased concentration or agitation or dizziness. Upon examination, Aaron Randall Poteat, PA, noted Plaintiff did not have a sickly appearance or appear ill. Plaintiff exhibited a normal range of motion in her neck. Plaintiff exhibited normal bowel sounds and no abdominal tenderness. Plaintiff had no musculoskeletal edema or tenderness. Plaintiff exhibited normal muscle strength and tone and had normal coordination. Plaintiff exhibited a normal mood and affect along with a normal memory. Plaintiff was assessed with left upper quadrant pain and a fatty liver. Plaintiff reported feeling better after medication and fluids and was discharged home to follow-up with her primary care physician and possibly a gastrointestinal physician.

On September 28, 2015, Plaintiff was seen by Dr. Green for a pain management follow-up for low back pain. (Tr. 1583-1587). Dr. Green noted Plaintiff was doing pretty good status post lumbar RFA, but then fell trying to change a litter box. Plaintiff reported this aggravated her right hip and low back pain. Upon examination, Dr. Green noted Plaintiff exhibited a normal gait and range of motion but had tenderness in her lumbar spine and hips. Plaintiff exhibited a normal mood and affect. Dr. Green assessed Plaintiff with a disorder of the sacrum, enthesopathy of the right hip region, obesity, and spondylosis of the lumbar region without myelopathy or radiculopathy. Dr. Green recommended Plaintiff undergo right SIJ and GT bursa injections. Plaintiff was encouraged to exercise daily.

On October 1, 2015, Plaintiff underwent a right sacroiliac joint injection (SIJ) and a right greater trochanteric (GT) bursa injection performed by Dr. Green. (Tr. 1149-1150). Plaintiff tolerated the procedure well without immediate complication.

On January 14, 2016, Plaintiff was seen by Dr. Bradford for a follow-up for her iron deficiency anemia. (Tr. 599-601). Dr. Bradford noted Plaintiff continued to have no clinical evidence of blood loss but was presumed to have ongoing occult gastrointestinal blood loss. Plaintiff mentioned a worsening of her depression symptoms. Dr. Bradford noted Plaintiff would schedule an appointment with her primary care physician to discuss a medication adjustment. Plaintiff reported a decreased energy level. Dr. Bradford recommended Plaintiff refrain from physically strenuous activity but opined Plaintiff was ambulatory and able to carry out light to sedentary work. Upon a physical examination, Dr. Bradford noted Plaintiff exhibited normal range of motion in her spine and extremities with no obvious sign of weakness. Plaintiff was noted to have a normal psychiatric exam.

On January 15, 2016, Plaintiff was seen by Amanda Johnson, NP, for a pain management follow-up for her low back pain. (Tr. 1305-1309). Plaintiff reported one hundred percent pain relief after her right GT bursa injection, and about fifty percent pain relief after the right SIJ injection. Plaintiff reported she also had about a seventy-five percent improvement in her back pain after receiving lumbar RFA procedures, bilaterally, about five months ago, but the pain was now returning. Nurse Johnson noted Plaintiff's medication consisted of Ibuprofen and Effexor. Upon examination, Nurse Johnson noted Plaintiff had a normal gait but decreased lumbar range of motion and tenderness and pain with internal and external rotation of the hips. Plaintiff reported a depressed mood and some suicidal thoughts but denied a plan and said she always talked to her husband about these thoughts. Plaintiff reported she was sexually abused by her father as a child and thought this contributed to her depression. Plaintiff was to continue taking her Effexor and Nurse Johnson referred Plaintiff for counseling. Plaintiff was scheduled for a repeat right lumbar RFA procedure. Plaintiff was encouraged to exercise daily.

On February 9, 2016, Plaintiff underwent a right-sided RFA to denervate the right L3-4, L4-5, L5-S1 facet joints performed by Dr. Adam Green. (Tr. 353-355). Plaintiff reported greater than fifty percent pain relief after her first RFA. Plaintiff tolerated the procedure well without immediate complication.

On February 15, 2016, Plaintiff was seen by Mr. Paul Moore for psychotherapy. (Tr. 2785-2803). Plaintiff reported her siblings would not speak to her since she reported she was sexually abused as a teenager by her father, who died in 2013. Plaintiff reported she discovered her father sexually abused her eldest daughter when her daughter was eight or nine years old. Plaintiff reported she had been struggling with depression for a long time and that she was taking an antidepressant. Plaintiff was to start individual therapy.

On February 17, 2016, Plaintiff was seen by Dr. Faddis for a follow-up for her depression. (Tr. 1451-1467). Plaintiff reported she was taking Effexor as directed and that it was working well. Plaintiff denied side effects. Plaintiff reported that overall, her symptoms were well controlled. Plaintiff reported she was also attending counseling and felt good about the sessions as well. Plaintiff denied sleep disturbance, confusion or agitation, decreased appetite or energy or a lack of interest or pleasure. Plaintiff was assessed with depression with anxiety and allergic rhinitis.

On March 16, 2016, Plaintiff was seen by Nurse Johnson for a pain management follow-up for her low back pain. (Tr. 346-348). Nurse Johnson noted since Plaintiff's last visit, Plaintiff had a right lumbar RFA which gave her at least eighty percent relief of her right-sided low back pain. Plaintiff indicated her left-sided low back pain was increasing and she inquired about a repeat left-sided lumbar RFA. Plaintiff reported her pain was aggravated by standing, walking and exercise but relieved with sitting, cold and rest. Plaintiff was assessed with spondylosis of the

lumber region without myelopathy or radiculopathy, lumbar degenerative disc disease, right greater trochanteric bursitis, a pain disorder with psychological component and obesity. Plaintiff was to continue her medication and counseling. Injections were scheduled. Plaintiff was counseled on lifestyle modifications to include weight loss and daily exercise.

On March 30 2016, Plaintiff was seen at the Mercy Clinic for psychotherapy with Mr. Moore. (Tr. 2804-2822). Mr. Moore noted they reviewed the feelings Plaintiff experienced due to the abuse. Plaintiff was pleasant and cooperative during the session.

On April 21, 2016, Plaintiff was seen by Dr. Bradford for a follow-up for her iron deficiency anemia. (Tr. 596-598). Dr. Bradford noted Plaintiff reported chronic intermittent lower abdominal pain believed to be related to scar tissue from previous surgeries. Dr. Bradford noted fatigue was probably Plaintiff's biggest issue. Plaintiff also reported some depression symptoms. Upon a physical examination, Dr. Bradford noted Plaintiff exhibited normal range of motion in her spine and extremities with no obvious sign of weakness. Plaintiff was noted to have a normal psychiatric exam. Plaintiff was encouraged to exercise. Dr. Bradford recommended Plaintiff refrain from physically strenuous activity but opined Plaintiff was ambulatory and able to carry out light to sedentary work.

On September 9, 2016, Dr. David L. Hicks, a non-examining medical consultant, completed a RFC assessment opining that through the date last insured Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than shown, for lift and/or carry; could occasionally stoop and crouch; and that manipulative, visual, communicative and environmental limitations were not

evident. (Tr. 120-122). On April 6, 2017, after reviewing the records, Dr. James Wellons affirmed Dr. Hicks' opinion. (Tr. 138-140).

On December 6, 2016, Dr. Don B. Johnson, a non-examining medical consultant, completed a Mental RFC Assessment opining that through the date last insured Plaintiff did not have a severe mental impairment. (Tr. 118-119). In making this determination, Dr. Johnson gave great weight to the opinion of Dr. Terry L. Efird who performed a mental diagnostic evaluation on November 28, 2016. On April 6, 2017, after reviewing the records, Dr. Laurie Clemens affirmed Dr. Johnson's opinion. (Tr. 136-137).

### III. Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Combs v. Berryhill, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." Id. The Court will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. Id.

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one

10

year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.   Discussion:**

Plaintiff argues the following issue on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; 3) the ALJ erred at Step Two; and 4), the ALJ erred in determining Plaintiff's RFC.[2]

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

### A.     Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2016. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of March 1, 2015, her amended alleged onset date of disability, through June 30, 2016, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB, she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

### B.     Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during

the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

      **C.**      **Plaintiff's Impairments:**

Plaintiff argues the ALJ erred by finding Plaintiff did not have a severe mental impairment prior to the expiration of her insured status.

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing she suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

In determining Plaintiff's alleged mental impairments, the ALJ determined Plaintiff had no limitation in the area of understanding, remembering or applying information; mild limitation in the area of interacting with others; mild limitation in the area of concentrating, persisting, or maintaining pace; and no limitation in the area of adapting or managing oneself. (Tr. 12-13). In making this determination, the ALJ gave great weight to the opinions of Drs. Johnson and Clemens, both non-examining medical consultants, who had the benefit of reviewing all the medical evidence to include a mental diagnostic evaluation performed in November of 2016, four months after Plaintiff's insured status had expired. It is also noteworthy that during the relevant time period, Plaintiff was noted to have a normal psychiatric exam in August of 2015, January of 2016, and April of 2016.

13

The Court further notes that while the ALJ did not find Plaintiff had a severe mental impairment, the ALJ discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). After reviewing the record as a whole, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

**D.** **Subjective Complaints and Symptom Evaluation:**

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record

14

revealed that Plaintiff completed a Function Report in August of 2016, almost two months after the expiration of her insured status, reporting she was able to prepare simple meals, to do household chores with rest periods, to take care of her personal needs, and to watch movies and television. (Tr. 240).

With respect to Plaintiff's alleged impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). The record revealed Plaintiff reported her medication to treat her depression was working well and that the injections helped relieve her pain by fifty to eighty percent.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity prior to her date last insured. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible for the time period in question.

### E.     The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning

a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform light work with limitations through her date last insured. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). A review of the record revealed Dr. Bradford repeatedly opined Plaintiff was able to perform light to sedentary work. (Tr. 597, 601, 604). After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

  **F.**  **Past Relevant Work:**

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that during the time period in question, Plaintiff could perform her past relevant work as a cashier checker, as generally performed.

**V.     Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal**

**questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of September 2020.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE